IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

KAREN TAYLOR,

    Plaintiff,

v.  No. 08-1278

AUTOZONERS, LLC,

    Defendant.

_____

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT,
DENYING PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT
AND DISMISSING CASE
_____

INTRODUCTION

On November 12, 2008, the Plaintiff, Karen Taylor, initiated this action against the Defendant, AutoZoners, LLC ("AutoZoners"), alleging violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* (the "FMLA") and retaliation for filing a workers compensation claim. Before the Court are the parties' cross-motions for partial summary judgment relative to the FMLA claim, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

STANDARD OF REVIEW

Rule 56 states in pertinent part that a ". . . judgment . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharm., Inc., 862 F.2d 597, 601 (6th Cir. 1988). "The district court must construe the evidence and draw all reasonable inferences in favor of the

nonmoving party." Am. Civil Liberties Union of Ky. v. Grayson County, Ky., ___ F.3d ___, 2010 WL 114361, at *3 (6th Cir. Jan. 14, 2010) (citing Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "The central issue is 'whether the evidence presents a sufficient disageement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc., 588 F.3d 908, 915 (6th Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." Ferro Corp. v. Cookson Group, PLC, 585 F.3d 946, 949 (6th Cir. 2009) (citation omitted). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits." Id. at 949-50 (quoting Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991)).

## FACTS

The following facts are undisputed. The Plaintiff was hired by AutoZoners on July 3, 2007 as an "order selector" at its distribution center in Lexington, Tennessee. (Pl.'s Resps. to Def.'s First Req. for Admis. at 1; Dep. of Karen Taylor ("Taylor Dep.") at 25.) The Plaintiff's original position as an outbound order selector encompassed bending, lifting, fast-paced work and long periods of standing. (Aff. of Karen Taylor ("Taylor Aff.") ¶ 6.) On April 28, 2008, Taylor injured her back while working. (Pl.'s Resps. to Def.'s First Req. for Admis. at 4.) She was evaluated and treated for the back injury by Charles W. White, Jr., M.D. on April 28 and May 27, 2008. (Pl.'s Resps. to Def.'s

First Req. for Admis. at 4-5.) Dr. White diagnosed back strain and prescribed Meloxicam tablets, back exercises and the use of a heating pad to affected areas. (Pl.'s Mem. in Supp. of Pl.'s Cross-Mot. for Partial Summ. J. & in Opp'n to Def.'s Mot. for Partial Summ. J., Ex. A.) On May 27, 2008, he ordered a diagnostic imaging, which was normal. (Pl.'s Mem. in Supp. of Pl.'s Cross-Mot. for Partial Summ. J. & in Opp'n to Def.'s Mot. for Partial Summ. J., Ex. A.)

The Plaintiff then received treatment from Jason T. Hutchison, M.D. on June 4, June 18 and July 17, 2008. On each of these occasions, Dr. Hutchison released Taylor to return to work on light duty. On June 4, 2008, Dr. Hutchison diagnosed a low back injury (lumbar strain) with failure to improve and prescribed physical therapy and a Medrol Dosepak. (Aff. of Jason Hutchison, M.D. ("Hutchison Aff.") ¶ 2.) He restricted her to lifting or pushing no more than twenty pounds and from stooping, bending, twisting, squatting, climbing, crawling, or standing or walking more than four hours per shift. (Mot. of Def. for Partial Summ. J., Ex. D1.) At that time, the Plaintiff was initially limited to four hours of work, after which she went home. (Taylor Aff. ¶ 7.) Her job duties consisted primarily of placing labels on racks. (Taylor Aff. ¶ 7.) She also swept the warehouse, put empty boxes into a crusher and performed "pick to light," which involved placing light items onto a tote on rollers. (Taylor Aff. ¶ 7.)

An MRI was conducted on June 10, 2008, which was also normal, although Taylor continued to experience pain and restricted motion. (Hutchison Aff. ¶ 3.) On June 18, 2008, Dr. Hutchison treated her for lumbar strain, prescribing Ultram ER 200 milligrams and recommending more aggressive physical therapy. (Hutchison Aff. ¶ 3.) The Plaintiff was restricted from stooping, bending or twisting, and from lifting or pushing more than fifteen pounds. (Mot. of Def. for Partial Summ. J., Ex. D1.) She received physical therapy for back pain in June and July 2008. (Pl.'s Mem.

in Supp. of Pl.'s Cross-Mot. for Partial Summ. J. & in Opp'n to Def.'s Mot. for Partial Summ. J., Exs. B & C.)

On July 14, 2008, Taylor was seen by Ronald Hoffmeyer, M.D. in the emergency room for chronic low back pain and acute sciatica. (Pl.'s Mem. in Supp. of Pl.'s Cross-Mot. for Partial Summ. J. & in Opp'n to Def.'s Mot. for Partial Summ. J., Ex. D.) She was prescribed Motrin and Lortab and instructed to follow up with Dr. Hutchison in three to five days. (Pl.'s Mem. in Supp. of Pl.'s Cross-Mot. for Partial Summ. J. & in Opp'n to Def.'s Mot. for Partial Summ. J., Ex. D.) Dr. Hutchison's July 17, 2008 treatment of the Plaintiff focused on low back/myofascial pain as well as psychosocial issues and anxiety related to Taylor's living arrangement with her mother. (Hutchison Aff. ¶ 4.) His diagnosis remained myofascial-type back pain. (Hutchison Aff. ¶ 4.) Dr. Hutchison maintained movement restrictions and recommended that the Plaintiff continue to engage in a home exercise program. (Hutchison Aff. ¶ 4.) On July 22, 2008, Taylor received a Demerol shot at the emergency room for low back pain. (Pl.'s Mem. in Supp. of Pl.'s Cross-Mot. for Partial Summ. J. & in Opp'n to Def.'s Mot. for Partial Summ. J., Ex. E.) She was treated at the emergency room again on July 28 and August 3, 2008 for the same low back pain. (Hutchison Aff. ¶ 5; Pl.'s Mem. in Supp. of Pl.'s Cross-Mot. for Partial Summ. J. & in Opp'n to Def.'s Mot. for Partial Summ. J., Ex. G.) Following the July 28 visit to the emergency room, the Plaintiff was given a slip stating that she was to return to work on July 30, 2008. (Mot. of Def. for Partial Summ. J., Ex. D5.)

On August 11, 2008, the Plaintiff sought a second opinion concerning her back injury from John P. Masterson, M.D. (Pl.'s Resps. to Def.'s First Req. for Admis. at 4, 6.) She obtained treatment from Dr. Hutchison again on August 26, 2008. (Hutchison Aff. ¶ 6.) He recommended a TENS-unit for chronic myofascial-type pain, continued home exercise and limited treatment by

4

a chiropractor. (Hutchison Aff. ¶ 6.) He also released her to return to work without restriction, believing she had reached maximum medical improvement. (Hutchison Aff. ¶ 6.)

AutoZoners has an attendance policy (the "Policy") under which employees receive "occurrence" points for being late for or absent from work and for leaving work early. (Mot. of Def. for Partial Summ. J., Ex. B4.) Taylor acknowledged her receipt of the Policy on March 6, 2007. (Mot. of Def. for Partial Summ. J., Ex. B5.) The Policy provides that any employee receiving twelve occurrences within a twelve-month period is subject to termination. (Mot. of Def. for Partial Summ. J., Ex. B5.) However, absences for work-related injuries and FMLA leave are not recorded as occurrences. (Mot. of Def. for Partial Summ. J., Ex. B5.)

It is undisputed that the Plaintiff became eligible for FMLA leave on July 3, 2008, her one-year anniversary date, and that AutoZoners was a covered employer under the FMLA. Prior to her anniversary date, Taylor received seven-and-one-half occurrences. After that date, she received five-and-one-half, to-wit: one on July 13, 2008 for absence from work; one on July 14 for absence from work; one-half on July 26 for leaving work early; one on July 27 for absence from work; and two on July 28 for absence from work without proper notification. (Pl.'s Resps. to Def.'s First Req. for Admis. at 3-4.) According to the Plaintiff, all of these absences were associated with her back injury. (Taylor Dep. at 85-87, 103-04.) On July 28, 2008, Taylor was terminated for violating the Policy. (Mot. of Def. for Partial Summ. J., Ex. B7.)

## ANALYSIS OF THE PARTIES' CLAIMS

*FEDERAL CLAIMS.*

The claims at issue in both parties' motions for partial summary judgment have been brought under the FMLA.

### *FMLA Generally.*

The FMLA provides to employees unpaid leave for up to twelve weeks in a twelve month period "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). In doing so, the statute "accommodates the important societal interest in assisting families by establishing minimum labor standard[s] for leave." H.R. Rep. No. 103-8(I), 103d Cong., 1st Sess. 1993, at *21.

The FMLA prohibits employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right" under the statute. 29 U.S.C. § 2615(a). It also prohibits an employer from discriminating or retaliating against an employee for taking FMLA leave. 29 U.S.C. § 2615(a)(2). Thus, the legislation provides recovery under two theories: interference and retaliation. Hunter v. Valley View Local Schs., 579 F.3d 688, 691 (6th Cir. 2009), *reh'g & reh'g en banc denied* (Oct. 26, 2009).

### *FMLA Interference.*

In order to prevail on an FMLA interference claim, the plaintiff must show that "(1) [she] is an eligible employee; (2) the defendant is an [FMLA] employer; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of [her] intention to take leave; and (5) the employer denied the employee FMLA benefits to which [she] was entitled." Cavin v. Honda of Am. Mfg., Inc., 346 F.3d 713, 719 (6th Cir. 2003), *reh'g & reh'g en banc denied* (Feb. 5, 2004) (internal citations and quotation marks omitted).

A plaintiff cannot establish a prima facie case of FMLA interference without demonstrating that she suffered from a "serious health condition." *See* Morris v. Family Dollar Stores of Ohio, Inc., 320 F.App'x 330, 337 (6th Cir.), *cert. denied* ___ U.S. ___, 130 S. Ct. 418, 175 L. Ed. 2d 272

(2009). It is the position of the Defendant that Taylor has failed to do so. The term "serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The Department of Labor's regulations give a more detailed explanation of what qualifies as a serious health condition under § 2611's continuing treatment prong:

> [a] serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>
> (i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
>> (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
>>
>> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.
>
> (ii) Any period of incapacity due to pregnancy, or for prenatal care.
>
> (iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:
>
>> (A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;
>>
>> (B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

>> (C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

> (iv) A period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective. . . .

> (v) Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for restorative surgery after an accident or other injury, or for a condition that would likely result in a period of incapacity of more than three consecutive calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), kidney disease (dialysis).

29 C.F.R. § 825.114(a)(2).[1]

"Whether an illness qualifies as a serious health condition under the FMLA is a legal question which the court must determine." Alston v. Sofa Express, Inc., No. 2:06-cv-0491, 2007 WL 3071662, at *8 (S.D. Ohio Oct. 19, 2007). "A plaintiff may not avoid summary judgment on this issue by simply alleging [her] illness to be a serious health condition." Id.

Taylor argues that her back injury involves continuing treatment by a health care provider for a period of incapacity of more than three calendar days or for a chronic condition, thus invoking subparagraphs (i) and (iii) of the regulations. Under each of these subsections, a plaintiff is required to show incapacity. *See* 29 C.F.R. §§ 825.114(a)(2)(i) & (iii). The regulation itself defines "incapacity" as "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom." *See* 29 C.F.R. § 825.114(a)(1). "A plaintiff seeking to prove that [she] has a serious health condition must demonstrate that the

---

[1] The Department of Labor promulgated new regulations effective January 16, 2009 which interpret the phrase "serious health condition." *See* The Family and Medical Leave Act of 1993, 73 Fed.Reg. 67934, 68079 (Nov. 17, 2008). Neither party has contended the regulations should apply retroactively.

condition rendered [her] incapacitated. . ." Helmick v. Solid Waste Auth. of Cent. Ohio, No. 2:07-CV-912, 2009 WL 650417, at *6 (S.D. Ohio Mar. 10, 2009); Brooks v. Lowe's Home Ctrs., Inc., No. C2-04-740, 2006 WL 783453, at *8 (S.D. Ohio Mar. 27, 2006). "Under the plain language of the statute and regulations, [incapacity] is a threshold consideration." Bickford v. Life Care Ctr. of Am., No. 1:07-cv-295, 2009 WL 77455, at *1 (E.D. Tenn. Jan. 8, 2009) (quoting Olsen v. Ohio Edison Co., 979 F. Supp. 1159, 1164 (N.D. Ohio 1997)).

> Incapacitation for the purposes of the FMLA does not mean that, in the employee's own judgment, he or she should not work, or even that it was uncomfortable or inconvenient for the employee to have to work. Rather, it means that a "health care provider" has determined that, in his or her professional medical judgment, the employee cannot work (or could not have worked) because of the illness. Generally, then, a plaintiff must come forward with some evidence that a health care provider has instructed, recommended, or at minimum authorized an employee not to work for at least four consecutive days for that employee to be considered incapacitated for the required period of time under the FMLA.

Helmick, 2009 WL 650417, at *6 (quoting Alston, 2007 WL 3071662, at *8.) If a plaintiff cannot show she was incapacitated, summary judgment is appropriate. Bickford, 2009 WL 77455, at *1; Whitworth v. Consol. Biscuit Co., N. 6:06-112-DCR, 2007 WL 1075774, at *5 (E.D. Ky. Apr. 6, 2007); *see also* Bond v. Abbott Labs., 7 F. Supp. 2d 967, 973 (N.D. Ohio 1998), *aff'd in part* 188 F.3d 506 (6th Cir. 1999) ("If a plaintiff cannot show he or she had a condition that incapacitated him or her, the Court's inquiry is over and summary judgment is appropriate"); Olsen, 979 F. Supp. at 1164 ("Indeed, it is only where an incapacity is shown that the Court need proceed to a consideration of whether the employee received 'continuing treatment' within the meaning of the [FMLA]").

AutoZoners argues the only time Taylor was "unable" to work occurred when the emergency room physician at Jackson-Madison County General Hospital on July 28, 2008 gave her the slip stating she could return to work on July 30, 2008. Prior to July 28, 2008, the Defendant submits,

9

Taylor's back injury did not involve a period of incapacity.

The Plaintiff responds by contending that the dates she received treatment are considered periods of incapacity, citing 29 C.F.R. § 825.115, which provides in pertinent part that

> [a]n employee is "unable to perform the functions of the position" where the health care provider finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position . . . An employee who must be absent from work to receive medical treatment for a serious health condition is considered to be unable to perform the essential functions of the position during the absence for treatment. . . .

However, Taylor cites to no caselaw from this or any other circuit to support her interpretation of § 825.115 and, indeed, the cases from this Circuit do not, in the Court's view, bolster her position.[2] In this Circuit, it appears that "incapacity" means "unable to work." *See* Lawson-Brewster v. River Valley Sch. Dist., No. 4:06-cv-58, 2008 WL 1820908, at *7 (W.D. Mich. Apr. 22, 2008), *recons. denied*, 2008 WL 2224116 (W.D. Mich. May 29, 2008) ("plaintiff's failure to come forward with any evidence that her depression precluded her from working or performing any other daily activities on December 18 and 19, 2004 necessarily results in a conclusion that the defendants are entitled to summary judgment on plaintiff's claim under the FMLA"); Whitworth, 2007 WL 1075774, at *10 (plaintiff failed to establish that she was incapacitated for purposes of summary judgment where her testimony that she was unable to do anything during her period of alleged incapacity was contradicted by evidence that she, among other things, visited her doctor's office for treatment); Bradley v. Mary Rutan Hosp. Ass'n, 322 F. Supp. 2d 926, 941 (S.D. Ohio 2004) ("To

---

[2]In Johnson v. United States Postal Service, No. 1:97-CV-794, 1999 WL 33759710 (W.D. Mich. May 26, 1999), the district court briefly discussed § 825.115 in relation to incapacity under § 825.114, emphasizing that the plaintiff failed to establish incapacity under § 825.114 and noting that "[t]he requirement that the condition be of a 'serious' nature simply cannot be read out of the statute." Johnson, 1999 WL 33759710, at *5.

prove that her condition was a *serious* health condition then, Bradley must show, initially, that she was incapacitated -- here, unable to work . . ."); Johnson, 1999 WL 33759710, at *5 (definition of "serious health condition" not met because plaintiff failed to show "incapacity," as she was "at no time instructed by a medical provider to remain off work"); Bond, 7 F. Supp. 2d at 974 ("Generally then, a health care provider must instruct, recommend, or at least authorize an employee not to work . . . for that employee to be considered incapacitated . . ."). Moreover, if "treatment" equals "incapacity," the language of § 825.114 makes no sense. At best, the evidence reflects that the Plaintiff was not unable to work, and therefore incapacitated, until July 28, 2008, when she was taken off work for two days by an emergency room physician. That two-day period falls short of the "three consecutive calendar days" of incapacity required for application of subsection (i).

However, a plaintiff does not have to be incapacitated for at least three consecutive calendar days under subparagraph (iii). Thereunder, Taylor must show that, subsequent to July 28, 2008, she was incapacitated due to a chronic serious health condition. 29 C.F.R. § 825.114(a)(2)(iii). A chronic serious health condition involves (1) "periodic visits to a health care provider for treatment;" (2) a continuing condition "over an extended period of time -- including recurring episodes of the underlying condition;" and (3) which "may be episodic, as with asthma, rather than continuing." Fink v. Ohio Health Corp., 139 F.App'x 667, 670 (6th Cir. 2005); *see also* Brenneman v. MedCentral Health Sys., 366 F.3d 412, 421 (6th Cir. 2004), *cert. denied*, 543 U.S. 1146, 125 S. Ct. 1300, 161 L. Ed. 2d 107 (2005).

Doctor visits for treatment under subsection (iii) should be at least biannual. *See* Fink, 139

F.App'x at 671; Perry v. Jaguar of Troy, 353 F.3d 510, 515 (6th Cir. 2003).[3]  "Treatment . . . includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition."  29 C.F.R. § 825.114(b).  A regimen of continuing treatment may include a course of prescription medication.  Brock v. United Grinding Tech., Inc., 257 F. Supp. 2d 1089, 1099 (S.D. Ohio 2003).  It does not include routine physical examinations.  29 C.F.R. § 825.114(b).

The regulations do not define "an extended period of time."  However, "the language of the FMLA itself, its legislative history, and the regulations promulgated pursuant to that statute all suggest that to constitute a 'chronic' illness, the condition must exist for well more than a few weeks."  Flanagan v. Keller Prods., Inc., No. Civ. NO. 00-542-M, 2002 DNH 047, 2002 WL 313138, at *7 (D.N.H. Feb. 25, 2002).

According to the evidence presented, Taylor's last doctor visit was on August 26, 2008 with Dr. Hutchison, who released her to normal duty.  There is no evidence that suggests her back pain will likely cause her pain or disability, or require continuing treatment, in the future.  "An ailment of that sort, from which the patient has completely recovered, simply fails to constitute a chronic condition."[4]  Id. (no chronic serious health condition in absence of evidence reflecting plaintiff's dental condition would likely cause pain or require continuing treatment in the future).  Thus, Taylor has failed to establish she was incapacitated due to a chronic serious health condition under subsection (iii).

---

[3]Indeed, the FMLA amendments effective January 16, 2009 specifically define "periodic visits" as "at least twice a year."  *See* 29 C.F.R. § 825.115(c)(1).

[4]Plaintiff avers that she continued to suffer back pain as late as August 2009.  There is no evidence, however, that she was receiving any continuing treatment from August 2008 to August 2009.

The Plaintiff also argues that she was incapacitated while on light duty as she was "unable to perform the function of [her] position." She cites to Pinson v. Berkley Medical Resources, Inc., No. 03-1255, 2005 WL 3210950 (W.D. Pa. June 21, 2005) as supportive of her claim. In determining whether the plaintiff was incapacitated under § 825.114, the Pinson court found that

> . . . BMR does not dispute that Pinson was unable to fulfill her usual work duties as a Hudson-Sharp operator. Furthermore, Herman testified that BMR often provided light-duty work for employees suffering from non-work-related injuries if it was readily available, but that it would not "create jobs" for such employees. Pinson does not argue that any light-duty work was available the week of September 3. A reasonable fact-finder could therefore conclude that, at a minimum, Pinson was unable to work at her usual position or fulfill any other role that BMR could have reasonably offered her at the time, and that Pinson could have worked the week of September 3 only if BMR had undertaken an effort to "create jobs" that would be considered light-duty work. *The parties have submitted no statute, case, or regulation addressing whether an employee with a light-duty work restriction, employed in a workplace where no light-duty work is available, is incapacitated under the FMLA, and independent research has discovered no such authority.* Yet there is nothing to suggest that an FMLA plaintiff must prove that he is unable to perform not only his regularly assigned duties, but also any alternative duties that an employer might reasonably assign. Indeed, the statutory language, which specifies that the condition must make "the employee unable to perform the functions of *the position of such employee"* suggests that only the duties of the employee's regular position are relevant.

Pinson, 2005 WL 3210950, at *16 (emphasis added). Obviously, Pinson has no precedential value in this Circuit and the portion of the foregoing relied upon by Taylor, contained in the last sentence, is merely dicta.

Courts in this Circuit have found that restrictions do not militate a finding of incapacity. *See* Johnson, 1999 WL 33759710, at * 5-6 (even though plaintiff was placed under restrictions inconsistent with her position, she had nonetheless failed to demonstrate she was incapacitated). Nor do limitations to light duty work. *See* Bond, 7 F. Supp. 2d at 975 (doctor's advice that plaintiff perform light duty fell short of establishing she was incapacitated and suffering from a "serious

13

health condition").

Finally, Taylor asserts that she was incapacitated on July 13, 26 and 17 of 2008 during periods of self-care. According to her deposition, she did not go to work on July 13, 2008 because of back pain. (Taylor Dep. at 103.) The Plaintiff left work early on July 26 and 27 because she had lower back pain. (Taylor Dep. at 85-86.) No doctor advised her to take off work on these dates. (Taylor Dep. at 85-86.) Again, by her own admission, Taylor was not instructed by a physician that she was unable to work on those days. *See* Johnson, 1999 WL 33759710, at *5, *supra*. Nor is her judgment that she could not work sufficient to establish incapacity. *See* Helmick, 2009 WL 650417, at *6, *supra*.

As Taylor has not demonstrated that she suffers from a serious health condition, the FMLA interference claim must fail. *See* Olsen, 979 F. Supp. at 1164, *supra*. Thus, the Defendant's motion for summary judgment on the interference claim is granted and Taylor's cross-motion for partial summary judgment on the issue of the existence of a "serious health condition" is denied.

*FMLA Retaliation.*

In her complaint, as amended, Taylor alleged that AutoZoners retaliated against her for taking FMLA qualifying leave. A plaintiff makes out a prima facie case of FMLA retaliation "by showing that (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity." Bryson v. Regis Corp., 498 F.3d 561, 570 (6th Cir. 2007) (citation omitted). The basis for the Defendant's motion for summary judgment as to this claim is that, if the Plaintiff is unable to demonstrate the existence of a "serious health condition," a retaliation claim under the statute cannot stand. AutoZoners' position appears to be supported by the caselaw. *See*

14

Morris, 320 F.App'x at 338 ("Because Morris's leave was not on account of a serious health condition, he cannot establish the first element [of the retaliation claim], that he engaged in an activity protected by the FMLA. For the same reasons that Morris's FMLA interference claim fails, we affirm the grant of summary judgment to Family Dollar on Morris's FMLA retaliation claim"); Fritz v. Phillips Serv. Indus., Inc., 555 F. Supp. 2d 820, 836 (E.D. Mich. 2008) ("Here, plaintiff's retaliation claim rises or falls with his entitlement claim. If he did not, in fact, have a serious health condition, and thus was not entitled to FMLA leave, plaintiff would be unable to show that he was engaging in activity protected by FMLA or that [his employer] fired him for his exercise of FMLA rights"); Cole v. Sisters of Charity of the Incarnate Word, 79 F. Supp. 2d 668, 672 (E.D. Tex. 1999) (as plaintiff failed to meet the requirements for a serious health condition and was therefore ineligible for FMLA leave, "[c]onsequently, [d]efendant cannot be held liable for a retaliation claim based on the FMLA"). Accordingly, summary judgment is also appropriate as to the retaliation claim.

*STATE CLAIMS*

Having disposed of the Plaintiff's claims under federal law, the Court now turns to her state law claim. The exercise by a district court of supplemental, or pendent, jurisdiction over state law claims is governed by 28 U.S.C. § 1367, which expressly permits the Court to decline the exercise of jurisdiction when it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Absent any remaining federal claims against the Defendant, in its sound discretion, the Court hereby dismisses without prejudice the Plaintiff's claims under state law. *See* Harper v. AutoAlliance Int'l, Inc., 392 F.3d 195, 210 (6th Cir. 2004) (while the exercise of supplemental jurisdiction over state claims in accordance with 28 U.S.C. § 1367 is discretionary, when federal

claims are dismissed before trial, it is customary to dismiss the state law claims without prejudice).

## CONCLUSION

In sum, for the reasons set forth herein, the motion for summary judgment of the Defendant is GRANTED, the Plaintiff's cross-motion for partial summary judgment is DENIED, and this matter is DISMISSED in its entirety.

IT IS SO ORDERED this 11th day of February, 2010.

         s/ J. DANIEL BREEN
         UNITED STATES DISTRICT JUDGE